# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 30, 2011

No. 11-60254
Summary Calendar

Lyle W. Cayce
Clerk

TIFFANY ALEXANDER; SANDRA HAWKINS; JACQUELINE MOORE;
STACY PROPHET,

Plaintiffs–Appellants

v.

CITY OF JACKSON MISSISSIPPI; RAYMOND MCNULTY, in his individual
and official capacities; LUTHER THOMPSON, in his individual and official
capacities; LARRY SMITH; HOWARD TAYLOR; HERMAN WATLEY,

Defendants–Appellees

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:04-CV-614

Before REAVLEY, SMITH, and PRADO, Circuit Judges.

PER CURIAM:[*]

This appeal concerns the district court's award of attorneys' fees to counsel

for the Plaintiffs–Appellants ("counsel") for their work in obtaining a settlement

in a case involving the Plaintiffs–Appellants' ("plaintiffs") claims for sexual

harassment and retaliation under Title VII of the Civil Rights Act of 1964 and

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-60254

42 U.S.C. § 1983. The district court awarded counsel $263,901.78 in fees and costs out of the $1,237,812.26 that counsel sought. Plaintiffs have timely appealed seeking review of that award.

## I. BACKGROUND

The underlying litigation has a long procedural history, much of which is immaterial to this appeal. In July 2003, each of the four plaintiffs filed sexual harassment charges with the Equal Employment Opportunity Commission. In May 2004, the EEOC issued each of the plaintiffs a "right to sue letter," and the underlying litigation was commenced in August 2004. Plaintiffs sought more than $1.2 million in damages as well as other equitable relief. After a month-long trial in May 2007, the jury awarded plaintiffs approximately $750,000 in damages. The district court, in May 2008, granted Defendants–Appellees' motion for new trial based on counsel's improper conduct and oddities with the jury award. A second trial was scheduled, but before it was commenced, plaintiffs settled for $250,000 and other non-monetary relief. During the course of the litigation and settlement, counsel billed for the time of ten attorneys from two firms (Woodley & McGillvary of Washington, D.C. and Louis H. Watson, P.A. of Mississippi). After settlement, a dispute remained (and is the subject of this appeal) over the amount of attorneys' fees that counsel was entitled to.

## II. STANDARDS OF REVIEW

In determining the appropriateness of awards of attorneys' fees, district courts engage in a two-step process laid out in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The first step requires the district court to "determine the reasonable number of hours expended on the litigation and the reasonable hourly rates for the participating lawyers. Then, the district court must multiply the reasonable hours by the reasonable hourly rates." *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995). This first-step determination is known as the lodestar calculation. *Id.* As "[d]eterminations of

2

hours and rates are questions of fact," we review a district court's lodestar calculation for clear error. *Id.* In the second-step, the lodestar, which is presumptively reasonable, can be adjusted upward or downward by the district court based on the district court's considerations of the *Johnson* factors. *Watkins v. Fordice*, 7 F.3d 453, 459 (5th Cir. 1993). In *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), we laid out twelve factors to be considered in deciding whether the lodestar ought to be adjusted. *See id.* at 718. Those factors are:

> (1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney by acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*No Barriers, Inc. v. Brinker Chili's Tex., Inc.*, 262 F.3d 496, 500 (5th Cir. 2001) (citing *Johnson*, 488 F.2d at 718). We review any adjustment based on the *Johnson* factors for abuse of discretion. *La. Power & Light*, 50 F.3d at 329. "We cannot overemphasize the concept that a district court has broad discretion in determining the amount of a fee award. This tenet is 'appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters.'" *Associated Builders & Contractors of La., Inc. v. Orleans Parish Sch. Bd.*, 919 F.2d 374 (5th Cir. 1990) (quoting *Hensley*, 461 U.S. at 437). Finally, we review a district court's grant of litigation costs for abuse of discretion. *Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1045 (5th Cir. 2010)

No. 11-60254

## III.  DISCUSSION

Plaintiffs present five issues for review in this court: (1) whether the district court erred in excluding the time of certain Woodley & McGillvary attorneys as duplicative; (2) whether the district court erred in reducing the number of hours billed by Louis H. Watson attorneys because it was not the lead firm; (3) whether the district court erred in excluding all hours associated with preparing for the second trial; (4) whether the district court erred in downwardly departing due to the "results obtained" by counsel; and (5) whether the district court erred in denying reimbursement of certain costs.

### 1.    Woodley & McGillvary Duplicative Exclusion

The bulk of the work done in this litigation was done by Molly Elkin and Ellen Eardley of Woodley & McGillvary—combined, they billed for over 2700 hours.  In addition to Elkin's and Eardley's hours, counsel billed for eight other Woodley & McGillvary attorneys whose fees amounted to over $288,000.  "If more than one attorney is involved, the possibility of duplication of effort along with the proper utilization of time should be scrutinized." *Johnson*, 488 F.2d at 717.  Here, the district court did just that.  For example, the district court excluded most of the hours billed by Megan Mechak because she only entered an appearance after the mistrial was declared and

> focused primarily on preparation for the second trial which never occurred.  Her time sheets cite "Review and analyze trial transcript" as well as work on multiple motions *in limine.*  Between October 2008 and March 2009, Attorney Mechak expended, she says, approximately 43.3 hours working on the fee petition.  The court allows the time spent by Attorney Mechak for work on the fee petition and excludes all other hours expended by her as duplicative and/or excessive.

*Alexander v. City of Jackson, Miss.*, No. 3:04-CV-614, 2011 WL 1059293, at *10 (S.D. Miss. Mar. 21, 2011).  We find no clear error in the district court's

No. 11-60254

reduction of the eight Woodley & McGillvary attorneys' hours due to their duplicative nature.

## 2.    Louis H. Watson Reduction

Louis H. Watson, P.A. served as local counsel in this matter. For the two attorneys from this firm that worked on the case, the district court found "[t]heir law firm[] is entitled to some recompense for preparation and trial, but their law firm was not the lead firm [so t]he court grants them their hours with a thirty percent (30%) reduction." *Id.* at *12. This is presumably because the only participation during trial by Louis Watson and Nick Norris was the brief cross-examination of two defense witnesses (one each). Nonetheless, each local counsel submitted bills for sitting in trial eight hours every day of the five-week trial. We do not find any clear error in the district court's reduction of Watson's and Norris's hours.

## 3.    Hours Dedicated to Preparing for the Second Trial

Plaintiffs claim that the district court erred in denying fees associated with preparation for the second trial. In this section of their brief, plaintiffs attack the district court's decision to grant a new trial, which the district court did in part due to counsel's improper conduct in the first trial. *Id.* at *2. The district court's grant of the motion for new trial is not before us and will not be reviewed; so far as we are concerned, that decision is final and unimpeachable. In its order, the district court discussed our decision in *Abner v. Kansas City Southern Railway Co.*, 541 F.3d 372 (5th Cir. 2008), where we held that "the district court may award attorney's fees and costs for a first trial even when it ends in mistrial and a second trial is necessary." *Alexander*, 2011 WL 1059293, at *8–9. Here, the district court found that counsel was at least partly responsible in necessitating the second trial. *Id.* at *2. In *Abner*, we said that the implications from our survey of our sister circuits' cases is that "if the plaintiff's unreasonable behavior did not cause the first trial verdict to be

5

vacated, a plaintiff may receive attorneys' fees for the expenses incurred during a trial that was later vacated." *Abner*, 541 F.3d 381–82.  The converse of this implication is what the district court used in the present case: where counsel's conduct causes, in whole or in part, the need for the district court to conduct a second trial, the fees and costs associated with that second trial cannot be recouped. *See Alexander*, 2011 WL 1059293, at *8–9.  We do not find clear error in the district court's extension of the principles of *Abner* to this case.

## 4.    Downward Departure Based on "Results Obtained"

Plaintiffs further claim that the district court abused its discretion in reducing the lodestar by sixty percent in light of results obtained.  Due to the broad discretion afforded to the district court in determining fee awards, "[w]e . . . inspect the district court's lodestar analysis only to determine if the court sufficiently *considered* the appropriate criteria." *La. Power & Light*, 50 F.3d at 329.  It is clear that the district court considered each of the twelve *Johnson* factors in reaching its final fee award. *Alexander*, 2011 WL 1059293, at *14–16.  In downwardly departing from the lodestar, the district court stated, "The results obtained cannot be said to encompass all relief sought.  Although it is not appropriate to award fees based on a percentage of monetary damages won through settlement, the magnitude of actual results compared to plaintiffs' desired results bears what an award of appropriate and reasonable attorney[s'] fees should be." *Id*. at *15.  The Supreme Court has indicated that the results obtained is "'the most critical factor' in determining the reasonableness of a fee award." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (quoting *Hensley*, 461 U.S. at 436).  We cannot say in light of the "district court's superior understanding of the litigation," *Hensley*, 461 U.S. at 437, that the downward departure based on the results obtained was an abuse of discretion.

**5.    Exclusion of Costs**

Finally, the plaintiffs challenge the exclusion of certain costs. Specifically, the district court excluded expert witness fees, certain travel expenses, mediation fees, photocopies, trial transcripts, overnight mail, and process server rush fees. *Alexander*, 2011 WL 1059293, at *16–18. The district court excluded the travel expenses of attorneys whose work it found duplicative. We see no abuse of discretion in this. With respect to the mediation fees, the district court correctly held that mediation fees "are not taxable as expenses under Title VII and are thus excluded." *Id.* at 17 (citing *Mota v. Univ. of Tex., Hous. Health Sci. Ctr.*, 261 F.3d 512, 530 (5th Cir. 2001)). We find no abuse of discretion in this holding. As for copies, overnight mail, and process server rush fees, the district court found that counsel "failed to articulate why it was necessary to expend many thousands of dollars" on these items. *Id.* at 18. Where counsel has failed to meet its burden of proving the reasonability of its costs*, see Mota*, 261 F.3d at 529, we find no abuse of discretion in the district court's failure to award those costs. With respect to both expert witness fees and trial transcripts, the district court excluded them after careful analysis because he found neither were "necessary" to the litigation of this case. *Id.* at *16–17. The district court found that the experts were used in the first trial, which was voided due to counsel's misconduct, *id.* at *16, and that the trial transcripts from the first trial were only needed because of the voiding of the first trial, *id.* at *17. We have found no clear error in the district court's extension of the principles of *Abner* to a case where attorneys cause a trial to be voided. Similarly, we find no abuse of discretion in the district court excluding costs that were only necessary to a trial voided due to such misconduct.

## IV.  CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of attorneys' fees and litigation costs in the amount of  $263,901.78.